## LOVELACE-FARMER CO. v. MRS. JOSIE SHAW, et al.

Western Section. April 14, 1927.

No petition for Certiorari was filed.

1. **Subrogation. The right of subrogation arises only in favor of one who pays the debt of another.**
   The doctrine of subrogation arises only in favor of one who pays the debt of another and not in favor of an accommodation maker of a note who pays in performance of his covenants; such rights never following a primary liability.

2. **Bills and notes. An accommodation maker is primarily liable upon his note.**
   In view of the Negotiable Instrument Act, an accommodation maker is primarily liable upon his note, even though he signed the word "surety" opposite his name.

3. **Subrogation. Evidence.** Evidence held not to entitle party to subrogation.

Where the appellant together with another party signed a note for another as accommodation makers and the note was not paid and later the debt was reduced to judgment against the three makers jointly, and appellant thereafter paid the judgment to avoid execution and filed a copy of the judgment in the county in which the makers land was located, held that he was not entitled to be subrogated to the rights of the payee of the note and did not acquire a lien upon the makers property.

Appeal from Chancery Court, Weakley County; Hon. V. H. Holmes, Chancellor.

Affirmed and remanded.

L. E. Holliday and Harry E. Jones, of Dresden, for appellant.

Maiden, Rowlett & Maiden, King Webb and F. K. Reynolds, all of Dresden, and D. W. Harper, of Martin, for appellee.

OWEN, J. The Lovelace-Farmer Company filed a creditor's bill against the estate of T. P. Shaw, in Weakley county. This bill was sustained. An administrator ad litem had been appointed. Shaw's widow, Mrs. Josie Shaw, was allowed homestead and dower in the lands of Shaw. One Copeland who had a mortgage on Shaw's real estate proved his claim, which claim was allowed as a prior claim over the other creditors. Among the creditors of T. P. Shaw was the appellant E. G. Fuller. Fuller has appealed from the decree of the Chancellor in now allowing Fuller's claim to be prior to the unsecured creditors of T. P. Shaw.

Four errors are assigned in this court, but they raise only one proposition, as follows: The Chancellor erred in decreeing that appellant's claim did not have priority over all other creditors of T. P. Shaw, except the trust indebtedness of H. S. Copeland: Nearly all the facts in this record are stipulated.

There is one deposition, that of I. L. Banks, Clerk and Master of the chancery court of Weakley county, and it appears from the undisputed facts that on the 15th day of January, 1923, T. P. Shaw, P. Jeanes and appellant executed a note, payable to I. L. Banks, Clerk and Master, for $604.50, which note was due on the fourth Monday in January, 1924. The note stated that it was for money loaned by said Clerk and Master under orders of said chancery court made in the cause of Harvey Garner, et al. v. Jack Garner, et al., which cause was pending in said court. This note was signed T. P. Shaw, principal, P. Jeanes, surety, E. G. Fuller, surety. The note bore eight per cent interest from date, and was in the usual form adopted by the Clerk and Masters of Tennessee where they take notes for money lent by order of the court.

Default was made in the payment of said note, and on July 25, 1924, judgment was had in the chancery court against the three

makers of said note, and in favor of the Clerk and Master for the use of those entitled thereto, said judgment being for $680.42, and cost of the decree. Execution was ordered. On August 7, 1924, E. G. Fuller paid said judgment in full, and requested the Clerk and Master to transfer and assign the judgment to him, which request was refused. Thereupon, on the same day, E. G. Fuller, procured a certified copy of the judgment and had it recorded in the Register's Office of Weakley county, and on the same day filed his bill seeking to reach the equity of T. P. Shaw in lands incumbered by a trust deed to H. S. Copeland.

Shortly after the filing of this bill by Fuller, T. P. Shaw died intestate. No steps were taken in the case of Fuller v. Shaw, et al., prior to the death of Shaw. After the general creditor's bill was filed by Lovelace-Farmer Company, and sustained, an order was entered permitting the bill filed by E. G. Fuller to stand as a creditor's petition in this cause. At the hearing Fuller insisted that he was entitled to be subrogated to the lien judgment in favor of I. L. Banks, Clerk and Master; that his claim is, by virtue of the recording of the judgment and filing of his bill, a prior claim against the equitable interest of T. P. Shaw in the real estate owned by said Shaw. The Chancellor, as heretofore stated, held against Fuller's contention.

It is insisted by counsel for appellant that the filing of a certified copy of the judgment rendered against Shaw, Jeanes and Fuller, by Fuller, within sixty days after the rendition of said judgment, that appellant is entitled to be subrogated to all the rights of the original judgment creditor.

Shannon's Code, sec. 4712, provides that a judgment of decree shall not bind the equitable interest of the debtor in real estate or other property, unless, within sixty days from its rendition, a memoranda judgment or decree, stating the amount and date thereof, with the names of the parties, is registered in the Register's Office of the county where the real estate is situated.

This was a joint judgment against Shaw, Jeanes and Fuller, and by Fuller paying the judgment in full to avoid an execution being issued, did not, in our opinion, entitle him to be subrogated to the rights of I. L. Banks, Clerk and Master. All the parties signing said note were co-makers, and primarily liable to the payee.

In Graham v. Shephard, 136 Tenn., 418, 189 S. W., 867, Mr. Justice Lansden, in delivering the opinion of the court, said: ''The person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same.''

The negotiable instrument law, being chap. 94 of the Acts of 1899, is construed in the case of Graham v. Shephard, supra, and it was held in said case that a negotiable instrument is discharged

when payment is made in due course by or on behalf of the debtor. By reference to the terms of the note executed by Shaw, Jeanes and Fuller, it is clear that the appellant is absolutely required to pay it. This note was reduced to a judgment against Fuller, and when Fuller paid the judgment for which he was primarily bound, he had no right to be subrogated to the position of I. L. Banks, Clerk and Master.

In the case of Merryman v. Parkey, 136 Tenn., 658, 191 S. W., 327, the Supreme Court held that H. E. Fugate, A. J. Moles and W. S. Moles were joint makers and primarily liable on certain notes, and were not to be treated as sureties, the one for the other, so far as the payee or holder is concerned. A. J. and W. S. Moles had assumed a contract for the purchase money of a tract of land executed by Fugate. It was held that where the grantee of mortgaged premises assumed the payment of the mortgage debt, he becomes the principal debtor and primarily liable therefor to the mortgagee, the mortgagor taking the status of surety so far as the promisory is concerned.

In the case of Merchants Bank & Trust Co. v. Bushnell, 142 Tenn., page 275, it was held that the doctrine of subrogation arises only in favor of one who pays the debt of another, and not in favor of an accommodation maker of a note who pays in performance of his own covenants; such right never following a primary liability. Citing and approving Spire v. Spire, 104 Kans., 501.

The court in the Bushnell case, supra, speaking through Mr. Chief Justice Lansden, said: "In view of the Negotiable Instrument Act, an accommodation maker was primarily liable upon his note, even though he signed the word 'surety' opposite his name," citing with approval Graham v. Shephard, supra.

The court further said: "Bushnell has no right of subrogation. He has not in fact paid the note, and if it should be treated as having been paid by him, and his rights arising from such payment should be considered as arising upon the facts of the case, he is not in a position to invoke the doctrine of subrogation because the debt is not the debt of another. The doctrine of subrogation arises only in favor of one who pays the debt of another, and not in favor of one who pays the debt in performance of his own covenants. This right never follows a primary liability." 37 Cyc., 374.

It results that all the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed.

Appeallant and his surety on appeal bond will pay the cost of the appeal. The cost of the lower court will be paid as decreed by the Chancellor.

Hesikell and Senter, JJ., concur.